## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Sandra Sanchez, on behalf of herself and others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> Conduent State and Local Solutions, Inc. <br> c/o Corporation Service Company <br> 830 Bear Tavern Road <br> West Trenton, NJ 08628 <br><br> and <br><br> Conduent, Inc. <br> c/o Corporation Service Company <br> Princeton South Corporate Center <br> 100 Charles Ewing Blvd., Suite 160 <br> Ewing, NJ 08628 <br><br> Defendant. | Civil Action No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY DEMANDED** |

## <u>INTRODUCTION</u>

Sandra Sanchez, an obligee custodial parent, on behalf of herself and others similarly situated, and if required by law in *parens patria* for the benefit of her minor children entitled to benefits or support ("support") in transactions covered by this matter, brings this action to obtain damages and/or equitable relief from Conduent State and Local Solutions, Inc. and Conduent, Inc. for the extraordinary and unlawful delays in the child and/or parental support payments it promised to process in a timely manner, and for the time value of those delays.

## PARTIES

1.     Plaintiff Sandra Sanchez (hereafter "Sanchez" or "Named Plaintiff"), is a citizen of Ohio, residing at 1471 Parkwood Road, Lakewood, Ohio 44107-4717. During the class period, Sanchez received payments processed by Defendant for child and/or parental support and/or related obligations owing to her. Plaintiff is a custodial parent (hereafter "obligee") of one or more minor children for whose benefit she receives monies paid by Plaintiff's obligor and processed by Defendant. Plaintiff brings this action for herself and if required by law in *parens patria* for those minor children. Those rights are re-pled in the allegations herein referencing "Sanchez" or "Plaintiff" or "Named Plaintiff", and every member of the putative class.

2.     Defendant, Conduent State and Local Solutions, Inc., is a New York domestic business corporation with its headquarters located at 100 Campus Drive, Florham Park, New Jersey 07932, and a wholly owned and controlled subsidiary of Conduent, Inc.

3.     Defendant Conduent Inc. is a publicly traded New York domestic business corporation with principal executive offices located at 100 Campus Drive Suite 200, Florham Park, New Jersey 07932, and the parent of Conduent State and Local Solutions, Inc.

4.     Conduent, Inc. and Conduent State and Local Solutions, Inc. are juridically linked, so that the parent sets the policies, runs the operations, benefits from the moneys generated, and shares interlocking management regarding the conduct and practices alleged herein.

5.     As used throughout this Complaint, "Defendant", "Defendants", "Conduent" or any variation thereof refer to and include both Conduent State and Local Solutions, Inc. and/or Conduent, Inc. collectively, individually and jointly and severally.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this class action  lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1332(d) which confers federal jurisdiction over class actions where, as here, "any member of a class of Plaintiffs is a citizen of a State different from any  defendant" and "the aggregated amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs."

7.      This Court has personal jurisdiction over the parties because Plaintiff  submits to this Court's jurisdiction and Conduent is headquartered in this District.

8.      Venue exists in this Court under 28 U.S.C. § 1391 because Conduent resides in, is headquartered in, transacts business in, is found within, and has agents in this  District and a substantial part of the events giving rise to Plaintiff's claims arose in this  District.

## FACTUAL ALLEGATIONS

A.      ***Conduent and ExpertPay***

9.      Conduent provides child and/or parental support payment processing services for a fee.

10.      According to Conduent, this service, which it calls ExpertPay, "acts as a clearing and distribution system that permits an obligor to interact with many states from a single web site."  As used in this Complaint, "obligor" means a person who is responsible to pay child or other support or benefits to another, such as to the Named Plaintiff and the putative class members (typically called the "obligee" or "recipient.")

11.      Conduent standardizes this entire process across the country.

12.      Conduent, via its ExpertPay service, processes billions of dollars of child and/or parental support payments per year across the country.

13.     Defendant is a for-profit company.

14.     One of the ways Defendant makes money on ExpertPay transactions is a fee it charges the obligor to use its services.

15.     Another way Defendant makes money on ExpertPay transactions is time value of the money it is holding, including investment returns on the funds or on pledges of the funds.

16.     The longer Defendant can hold the funds, the more interest it can generate.

17.     To use ExpertPay, an obligor registers and agrees to Terms of Service on www.expertpay.com.

18.     These Terms of Service are uniform and state that "these TOS constitute the entire agreement between you and CONDUENT and govern your use of ExpertPay and the Services." Available at https://www.expertpay.com/obligorapp/#/legal.

19.     Under the TOS, Conduent agrees to (and requires) a New Jersey choice of law provision: "the relationship between you and CONDUENT shall be governed by the laws of the State of New Jersey without regard to its conflict of law provisions." See, TOS at ¶ 14.

20.     ExpertPay is operated as a standardized clearing and distribution system for child and/or parental support payment processing. Its services and relationships with its customers throughout the United States and the transactions covered by this lawsuit are uniformly governed by one state's law, the law of New Jersey, where Defendant is headquartered.

21.     Defendant receives the payment amount from the obligor, and Defendant then transfers the money to the involved state government agency (what Defendant calls a "State disbursement unit" or "SDU").

22.     The date on which payment funds are debited from the obligor's account is referred to by Defendant as the "Effective Date."

23.     When the payment is made to Defendant from a bank account, the Effective Date is the next business day (after the obligor initiates the payment).  When the payment is made using a credit card or Pay Pal, the Effective Date is the "same business day" the obligor initiates the payment.

24.     According to Defendant's ExpertPay Terms of Service, "the credit **will… *be sent*** to the receiving state agency **up to 5 business days after the [] Effective date**."

25.     Defendant's ExpertPay Terms of Service promise that "[a]ll payments ***are forwarded*** to the government agency **the day funds are available**."  See, Section B, para. 4, TOS: "All payments are forwarded to the Government Agency the day funds are available."

26.     Defendant treats the funds as available pursuant to the following provision of the TOS:  "All debited funds are subject to a five business day hold to verify funds and insure account authorization.  Upon the fifth business day, provided all funds have cleared, the fund are then transmitted to the receiving government agency."  Section B, para. 9, TOS.

27.     This lawsuit is directed to Defendant's failure, for the Named Plaintiff and the putative class, to meet these contract obligations in a timely manner.

28.     Defendant is not meeting its obligations on timely funds processing and transmission, to the detriment of Plaintiff and the class, and in breach of the Defendant-drafted contract.

29.     The subject contract/these Terms of Service are all for the intended benefit of the obligee custodial parents and children.

30.     Defendant's delays have kept support money from the parents and prevented the parents and children from receiving the benefit of that support.

31.     Those persons were damaged by the delay, including but not limited to loss of the time value of the money held by Defendant longer than permitted by the contract as stated in the TOS. Those damages total more than $5 million dollars.

32.     This class action is on behalf of the Named Plaintiff as part of and on behalf of the third party intended beneficiary class of obligee custodial parents and seeks recovery of damages for Defendant's breach of contract and/or equitable relief from Defendant for the extraordinary and unlawful delays in the payment processing services it contracted to deliver. The claims herein are pled under New Jersey law, pursuant to the Choice of Law provisions of the contract, found in the Terms of Service.

33.     This class action does NOT pertain, in any way, to the timeliness of: 1) obligor's payment to Defendant; or 2) the timeliness of the SDU's payment to the Named Plaintiff or the class. This class addresses ONLY whether Defendant held monies longer than permitted by its contract with Terms of Service, from the time the records show it received the money until the time it forwarded the money to the SDU.

**B.**    ***Plaintiff's Facts***

34.     Plaintiff has been receiving support payments processed through Defendant's ExpertPay for years.

35.     Going back to 2016, Plaintiff has not received payment any sooner than nine days from the "Effective Date" which, under the contract, is the date on which payment funds are debited from the obligor's account.

36.     At times, it has taken nearly three weeks for ExpertPay to forward the money in its possession to the obligee custodial parent.

37.     With Defendant's own promise that "[u]pon the fifth business day [after the Effective Date]… the funds are… transmitted to the receiving government agency", there is no reason for the length of these consistent delays other than Defendant's breach of contract, and other wrongful conduct of its own failure to process payments in a timely manner as it obligated itself to do under the contract per the ExpertPay Terms of Service.

38.     Defendant's uniform and manageable company records will show exactly when Defendant received the money, and when it sent the money to the SDU, and whether that was beyond the period of time allowed by the contract.  This is true for the Named Plaintiff and the members of the putative class.

39.     In fact, after changing payment process companies to a firm other than Conduent, it now only takes Plaintiff four days from the day money leaves the obligor's bank account to receive her support payment.

40.     Plaintiff, being the intended third party beneficiary of this contract and these Terms of Service, has been deprived of the time value of these consistent and significant delayed payments over years and years.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

42.     Plaintiff brings this action on behalf of herself and for all other persons similarly situated, to wit:

> All persons who received support payments that were processed through ExpertPay.

Excluded from Plaintiff's class are (a) Conduent and any entity in which it has a controlling interest; (b) Conduent's employees, officers, directors, agents, representatives and their family members; (c) class counsel, employees of class counsel and class counsels' immediate family members; and (d) the presiding judge and/or magistrate judge and any of their immediate family members.

43.    This class numbers over 100 persons and is so numerous that joinder of all members is impracticable, and it is further impracticable to bring all such persons before this Court.

44.    The injuries and damages to these class members present questions of law and fact that are common to each class member, and that are common to the entire class as a whole. Those common questions include, and are not limited to:

(a)    Whether ExpertPay has failed to timely forward support monies;
(b)    Whether that failure is a breach of contract;
(c)    Whether the named plaintiff as well as the putative class members are third party beneficiaries under the contract;
(d)    Whether time is of the essence under the contract terms which expressly set forth payment and conduct deadlines.
(e)    Whether Defendant has records of: 1) the date it receives funds from a customer-obligor, and the amount thereof; 2) the date it transmits those funds to the SDU; and (3) time value of the money it is holding, including investment returns on the funds or on pledges of the funds; and
(f)    Whether there is a time value associated with the delay in sending the money to SDU.
(g)    Whether Defendant's conduct is actionable under the other claims and causes of action set forth in this Complaint.

45.    Defendant has engaged in the same conduct regarding all class members.

46.    The claims, defenses, and injuries of the representative Plaintiff are typical of the claims, defenses and injuries of the entire class, and the claims, defenses and injuries of each class member are typical of those of the entire class.

47.     Representative Plaintiff will fully and adequately protect and represent the entire class, and all of the class members.

48.     The identity of the class members cannot be determined at this time, but will be so determined at a later time upon obtaining discovery from Defendant.

49.     The prosecution of separate actions by each class member would create a substantial risk of inconsistent or varying adjudications with regard to individual class members that would establish incompatible standards of conduct for Defendant.

50.     The prosecution of separate actions would also create a substantial risk of adjudication with respect to individual class members which, as a practical matter, would be dispositive of the interest of other members not parties to the adjudication, thereby substantially impairing and impeding their ability to protect these interests. Further, the maintenance of this suit as a class action is the superior means of disposing of the common questions which predominate herein.

## FIRST CAUSE OF ACTION
### Breach of Contract under New Jersey Law

51.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

52.     During all times relevant hereto, there existed a contract between obligor and Conduent.

53.     During all times relevant hereto, Plaintiff and the class members were and are third party beneficiaries to the contract between obligor and Conduent.

54.     Plaintiff and the class members, as well as their Obligors, as relates to the transactions where funds received by Defendant and not forwarded to the SDU within the time period required under the contract, have substantially performed all required conditions

precedent under the Defendant-drafted contract and Terms of Service, or Defendant has waived the same, and/or Defendant is estopped from asserting them.

55.     By failing to provide its contracted services in the timely manner that accords with the obligations of the contract, Defendant has breached its contract to Plaintiff's detriment and of the detriment of the class of all the other intended third party beneficiaries of the contract.

56.     As a direct and proximate result of the foregoing, Plaintiff and the class members have been damaged in an amount to be proven at trial.

<u>**SECOND CAUSE OF ACTION**</u>
**Breach of Implied Covenant of**
**Good Faith and Fair Dealing**

57.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

58.     During all times relevant hereto, there existed a contract between obligor and Conduent.

59.     Plaintiff and the class members are third party beneficiaries to the contract between the obligor and Conduent, and in New Jersey a third party beneficiary is entitled to sue for breach of the contract intended to benefit them.  <u>N.J.S.A</u>. 2A:15-2.

60.     In addition to the express terms of a contract, and in particular the contract in the case at bar, the law provides that every contract contain an implied covenant of good faith and fair dealing.

61.     This means that, even though not specifically stated in the contract, it is implied or understood that each party to the contract must act in good faith and deal fairly with the other party in performing or enforcing the terms of the contract.

62.    To act in good faith and fair dealing, a party must act in a way that is honest and faithful to the agreed purposes of the contract and consistent with reasonable expectations of the parties.

63.    However, when a party such as Defendant holds on to Plaintiff's money longer than permitted under the terms of the Defendant-drafted contract before sending it to the receiving agency (as alleged in paragraphs 15 -23 above), and which, in turn, deprives Plaintiff of the benefit of the money's time value, then Defendant has not acted in good faith and fair dealing.

64.    A party must not act in bad faith, dishonesty, or with improper motive to destroy or injure the right of the other party to receive the benefit or reasonable expectations of the contract.

65.    In the case at bar, Defendant's bad faith retention of Plaintiff's money longer than the stated term in the Defendant-drafted contract before sending it to the receiving agency is  not consistent with the reasonable expectations of Plaintiff or the obligor.

66.    The contract drafted by Defendant and intended for the benefit of Plaintiff and the class is subject to the implied covenant that Defendant would conduct its business with good faith and fair dealing.

67.    Defendant did not act with good faith and fair dealing in these matters, and/or acted with bad faith and unfair dealing towards Plaintiff and the class.

68.    The time it took Defendant to forward monies it received from obligors, for Plaintiff and the class to receive payments, was unfair and unreasonable, and/or in bad faith and in lack of good faith.

69.     Plaintiff and the class have been damaged as a direct and proximate result of the foregoing in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
**Unjust Enrichment/Disgorgement**

70.     Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

71.     Defendant has enriched itself at the expense of Plaintiff and the class members, and without paying the said Plaintiff or the class members for this benefit, by retaining for itself the interest and other value it received while holding Plaintiff and the class member's money longer than permitted under the terms of the Defendant-drafted contract before sending it to the receiving agency (as alleged in paragraphs 15 -23 above).

72.      Defendant knew Plaintiff and the class members would be prejudiced and harmed by the foregoing, and that Defendant would be unjustly benefitted thereby.

73.     Although Defendant accepted this benefit, Plaintiff and the class members are entitled to remuneration from Defendant.

74.     Defendant's failure of remuneration enriched Defendant beyond its contractual rights.

75.     Defendant has failed to turn over to the named Plaintiff and the putative class the amount it wrongfully received from those benefits, all to their detriment.

76.     The balance of the equities favors Plaintiff and class members because Defendant is failing to process payments to Plaintiff and the class in a timely, prompt, and just manner, to its enrichment and the detriment of Plaintiff and the class, and its conduct is unjust.

77.      As a direct and proximate result of the foregoing, Plaintiff and the putative class members demand equitable relief in the form of restitution and/or disgorgement of the

time value of the payments; the establishment of a constructive trust whereby Defendant, which has no legal or equitable right, claim, or interest in any of the monies and/or time value of any of the monies wrongfully delayed or retained, is an involuntary trustee holding these delayed monies and/or the time value of these monies in a constructive trust for the benefit of Plaintiff and the class; as well as any other relief permitted by equity or law against Defendant.

**FOURTH CAUSE OF ACTION**
**Violation of the New Jersey Consumer Fraud Act**
**N.J.S.A. 56:8-1 et seq.**

78.    Plaintiff realleges and incorporates herein all previous paragraphs of this Complaint.

79.    During all times relevant hereto, Defendant was and is a "person" as used in the Consumer Fraud Act (hereinafter referred to as the "Act" and/or the "CFA") which shall include any partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof. N.J.S.A. 58:8-1(d)

80.    Likewise, during all times relevant hereto, Plaintiff and the class members are "persons" as defined under the Act.

81.    During all times relevant hereto, Defendant engaged in the "sale" of "merchandise" to the Plaintiff and class members, including the obligees.

82.    Under the Act, the term the term "sale shall include any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute". [emphasis added] N.J.S.A. 58:8-1(e).

83.    Moreover, the term "merchandise" is defined by the Act as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale"

[emphasis added], <u>N.J.S.A</u>. 56:8-1(c).

84.    The nature of defendant's transactions were and are consumer-oriented, and Plaintiff and class members are each a consumer under the Act because they were all involved in a consumer-orientated sale of merchandise with Defendant.

85.    In fact, the CFA grants a private right of action to "any person who suffers an ascertainable loss as a result of an unlawful practice by another person." <u>N.J.S.A</u>. 56:8-19.

86.    The CFA does not require a contractual relationship or a formal relationship of any kind before a victim of an unlawful practice may sue the alleged perpetrator.

87.    A claimant in a private cause of action need not have a direct contractual relationship with the seller of a product or service. <u>Neveroski v. Blair</u>, 141 N.J. Super. 365, 376,381 (App. Div. 1976).

88.    Plaintiff and the class members as they relate to the transactions where funds received by Defendant and not forwarded to the SDU within the time period required under the contract are covered by New Jersey's consumer protection laws.

89.    During all times relevant hereto, Defendant engaged in unlawful practice involving Plaintiff and class members which constituted the act, use or employment of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, and/or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of merchandise or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby., is declared to be an unlawful practice.

90.     An example of the aforementioned unlawful practice may be found in the factual allegations above as well as Plaintiff's facts which includes a description of Defendant's wrongful withholding of Plaintiff's and the class members' monies longer than permitted by its contract Terms of Service, from the time the records show it received the money until the time it forwarded the money to the SDU.

91.     Representing the terms of a good or service but then failing to deliver that good or service as previously represented constitutes improper and actionable conduct under the CFA.

92.     The CFA and its terms, including 'unconscionable,' are liberally construed.

93.     When Defendant represented and promised it would perform its payment processing service in a timely manner and within a specific timeframe, but then failed to do so (as described above), it violated the CFA.

94.     As a direct and proximate cause of Defendant's unlawful practice as more fully set forth throughout this complaint above (to wit: Defendant's withholding and retaining these monies for longer than it should have, as well as generating time value on those monies for the period of holding beyond that allowed by the contract, and not paying that time value/interest to the Plaintiff and class member), Plaintiff and the class members each sustained an ascertainable loss and damages.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully request that this Court enter judgment as follows:

A.     An order declaring that this action is properly maintainable as a class action, certifying Plaintiff as the class representative, and designating Plaintiff's pro hac vice counsel as lead counsel for the class;

B.      An order awarding damages and/or other relief to Plaintiff and the class for Defendant's breach of contract;

C.      An order awarding damages to Plaintiff and the class for Defendant's breach of the duty of good faith and fair dealing;

D.      An order awarding Plaintiff and the class an equitable lien on the defendant's equity and an award requiring Defendant to equitably disgorge the time value of the delayed payments and/or provide Plaintiff and the class equitable restitution for same;

E.      An order creating a constructive trust whereby Defendant is a trustee holding the monies and/or time value of the monies as described above for the benefit of Plaintiff and the class members;

F.      An order awarding Plaintiff pre- and post-judgment interest;

G.      An order awarding Plaintiff's costs of suit; and/or

H.      An order providing such other and further relief, whether equitable or legal, as this Court may deem just and proper.

I.

## JURY DEMAND

Plaintiff demands a trial by jury of the maximum number of jurors allowed by law.

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not related to any other action, pending arbitration or administrative proceeding currently pending in any court.

Dated: December 22, 2020

/s/ *Michael J. Deem*
(New Jersey Bar No. 020391998)
**R.C. SHEA AND ASSOCIATES**
244 Main Street
Toms River, NJ 08754
(732) 505-1212
Email: mdeem@rcshea.com
*New Jersey Attorneys for Plaintiff and the class*

Patrick J. Perotti, Esq. (Ohio Bar #0005481)
Frank A. Bartela, Esq. (Ohio Bar #0088128)
**Dworken & Bernstein Co., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
Phone: (440) 352-3391
Fax: (440) 352-3469
Email: *pperotti@dworkenlaw.com*
        *fbartela@dworkenlaw.com*

*Counsel to be filing Pro Hac Vice through Attorney Deem to serve as Lead Counsel for Plaintiff and the class, upon admission.*

Andrew R. Malone #0079465
Malone Law LLC
614 W. Superior Ave. #1160
Cleveland, Ohio 44113
(216) 861-5511, (216) 861-0211 FAX
amalone@malonelawllc.com

*Local Ohio Counsel for named Plaintiff, to appear before this court upon pro hac vice admission.*